# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  3:25-cv-05031-MDH |
| MELISSA FARLEY f/k/a MELISSA NORRIS, et al.,, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court are the following motions: Plaintiff's Motion for Summary Judgment (Doc. 87) and Defendant Reannan Moser's Motion for Judgment on the Pleadings (Doc. 90). The Norris Defendants have joined in the Motion for Judgment on the Pleadings. The motions are ripe for review. For the reasons set forth herein, the Court grants Plaintiff's Motion for Summary Judgment.

## BACKGROUND

Plaintiff State Auto filed this declaratory judgment action regarding whether a homeowners' insurance policy it issued provides liability coverage for wrongful death claims asserted against the home's owner and residents in an underlying state court lawsuit.

State Auto issued a homeowners policy (the "State Auto Policy"), policy number 1001316386 with a policy period of November 12, 2023, to November 12, 2024, to Melissa Farley in connection with her ownership of a residential property located at 7057 Rosebay Drive, Neosho, Missouri (the "Insured Home").

1

The State Auto Policy states, in part:

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable…; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

….

"Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

….

"Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**SECTION II – EXCLUSIONS**

**E. Coverage E – Personal Liability and Coverage**
**F- Medical Payment to Others**

**…**

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 911 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

On February 6, 2025, Reannan Moser ("Moser") filed an action captioned *Reannan Moser*

*v. Melissa B. Norris*, *et al.*, Case No. 25NW-CV00383, in Newton County, Missouri. Moser's

original Petition asserted claims against defendants Melissa Farley f/k/a Melissa Norris, Blake Norris, and Carolyn Norris (collectively, the "Norris Defendants") arising out of the death of Moser's daughter, Mylee Moser ("Decedent").

The original wrongful death petition alleged that on or about July 4, 2024, Decedent "suffered a medical emergency resulting in her death" after being provided "fatal amounts of amphetamine and methamphetamine while a guest" at the insured's home. Count I alleged Melissa Norris was negligent in one or more ways, including that she "negligently failed to see that the premises were free of drugs and drug paraphernalia," she "negligently allowed invitees on the premises who used and/or distributed drugs and drug paraphernalia," she "failed to administer Narcan to … Decedent," and she "failed to supervise the property to make sure that it was a drug-free environment." Count II made similar allegations against Blake Norris and Count III alleged the same against Carolyn Norris. Count IV in the Original Petition alleged the Norris Defendants "violated Section 579.065 of the Missouri Revised Statutes, by knowingly providing … Decedent with fatal amounts of Amphetamine and Methamphetamine while a guest in their home." Count V in the Original Petition alleged the Norris Defendants "knew or should have known of the aforesaid dangerous conditions they created by providing … Decedent with Amphetamine and Methamphetamine while she was a guest on their property and/or by not providing a drug-free environment."

On April 17, 2025, State Auto filed this declaratory judgment action seeking a ruling that State Auto does not have a duty to defend or indemnify the Norris Defendants under the State Auto Policy with respect to the claims asserted in the underlying state wrongful death case.

On July 15, 2025, Moser's counsel provided State Auto's counsel a toxicology report and the medical examiner's autopsy report for Decedent. The toxicology report shows that Decedent

3

tested positive for amphetamines and opioids, including amphetamine, methamphetamine, naloxone, and fentanyl. The autopsy report states that the cause of death was "methamphetamine and fentanyl toxicity." It further states, "no evidence of injury attributable to death." Under "circumstances of death" the autopsy report states, in part, "a burnt piece of foil containing an unknown substance was reportedly found near the subject. Despite administration of Narcan, the subject remained unresponsive…" The Case Summary states, "it is my opinion based on the circumstances surrounding death and the findings at autopsy that Mylee Moser died as a result of combined fentanyl and methamphetamine toxicity. The manner of death is accident."

On July 22, 2025, Moser's counsel provided State Auto's counsel an affidavit executed by Detective Daniel L. Martin Jr. of the Newton County Sheriff's Department that states, in part, that there did not appear to be signs of trauma, that Narcan had been administered multiple times over approximately 6 months to the Decedent, and that this was the second suspected overdose at this address.

On July 25, 2025, after the exchange of this discovery, Moser was granted leave to file a First Amended Petition in state court. The First Amended Petition, the controlling allegations for purposes of this Court's review, alleges Decedent was discovered unresponsive in the bathroom of the residence and that the bathroom contained dangerous and unsafe conditions. The First Amended Petition contains only one count: Count I - Premises Liability – Dangerous Bathroom Conditions. The First Amended Petition alleges, in part: "the dangerous conditions in the bathroom involved an unreasonable risk of harm to invitees such as Decedent, including but not limited to the risk of slipping, falling, injury from defective fixtures, and drowning or asphyxiation hazards." It further alleges "as a direct and proximate result of Defendants' negligence in maintaining

4

dangerous bathroom conditions, Decedent suffered injuries that caused her death on July 4, 2024." Any allegations of drug usage are not present in the amended petition.

Plaintiff moves for summary judgment arguing that based on the facts known or reasonably apparent regarding the Decedent's cause of death, the State Auto Policy's exclusion for controlled substances bars coverage for Moser's claims because Decedent died from an illegal drug overdose. As a result, State Auto claims it owes no duty to defend or indemnify. Plaintiff contends even with the allegations contained in the First Amended Petition an insurer's duty to defend is determined by comparing the policy language to not only the facts alleged in the underlying pleading, but also the facts known or "reasonably apparent" at the time of such pleading.

Defendants argue summary judgment should be denied relying on comments found in the record that Decedent had "an unusual mark on her neck" and contend that Decedent may have been strangled by something because of the mark located on the right side of her neck. Defendants oppose summary judgment stating there is a factual dispute regarding the cause of Decedent's death. It does not appear that Defendants oppose State Auto's position that a death caused by a controlled substance overdose would fall under the policy's exclusions.

**STANDARD OF REVIEW**

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary

5

judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## **DISCUSSION**

Here, the issue before the Court is application of the insurance policy language to the underlying state court wrongful death case. The allegations in the First Amended Petition were filed *after* discovery was produced providing information that the cause of the underlying death was a drug overdose. The policy at issue contains an exclusion that specifically bars coverage for bodily injury arising out of the use of controlled substances by any person.

The United States District Court for the Eastern District of Missouri has ruled such an exclusion bars coverage for claims arising out of an illegal drug overdose. See *Safeco Ins. Co. of Am. v. Yount,* No. 4:19-CV-00890-MTS, 2020 WL 6445840, at *3 (E.D. Mo. Nov. 3, 2020). State Auto moves the Court to declare the policy at issue provides no coverage for the wrongful death claims due to the policy's exclusion for controlled substances.

Moser initially filed a wrongful death petition against the Norris Defendants alleging Decedent died from "fatal amounts of Amphetamine and Methamphetamine" and alleged the Norris Defendants failed to keep the Insured Home drug-free and for failing to administer Narcan to Decedent. In response to the initial case being filed State Auto filed this declaratory judgment action and immediately moved for summary judgment based on the allegations in Moser's Original

6

Wrongful Death Petition. State Auto argued the policy's exclusion for controlled substances plainly bars coverage because Moser is seeking damages in the wrongful death case for "bodily injury" "arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812."

After the filing of the initial summary judgment motion, Moser filed a First Amended Petition alleging that Decedent died from some physical injury involving the "dangerous conditions of the bathroom," e.g., a slip-and-fall, an injury from defective bathroom fixture, a drowning, or asphyxiation.

However, both before and after the First Amended Petition was filed, evidence was produced regarding the cause of death at issue. First, the Toxicology Report states that Decedent tested positive for methamphetamine and a fatal amount of fentanyl. The Autopsy Report identifies Decedent's cause of death as "methamphetamine and fentanyl toxicity." Further, the Autopsy Report does not identify any physical injuries as causing Decedent's death, nor does it mention a fatal fall, injury from defective bathroom fixture, drowning, or asphyxiation suffered by Decedent. To the contrary, the Autopsy Report concludes:

> It is [the medical examiner's] opinion based on the circumstances surrounding death and the findings at autopsy that [Decedent] died as a result of combined fentanyl and methamphetamine toxicity.

In addition, the Ambulance District Report denotes "Cardiac Arrest" from suspected "Drug Overdose" and describes how first responders treated Decedent for a drug overdose, including administering Narcan. The Ambulance District Report does not mention a fatal fall, injury from defective bathroom fixture, drowning, or asphyxiation suffered by Decedent.

The Sheriff's Office Report and Detective Martin's Affidavit do not indicate any "definitive or obvious signs of injury or altercation which could have led to the death" of Decedent.

State Auto argues it can reasonably rely on this evidence to establish the facts known or reasonably apparent regarding the cause of Decedent's death.

As a general rule, an insurer's duty to defend is determined by the provisions of the liability policy and the allegations in the petition. See *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). However, the petition is not controlling when the facts known or which reasonably should have been known to the insurer establish the existence or nonexistence of a duty to defend. *Id.*; see also, *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007).

State Auto argues the decision in *Safeco Ins. Co. of Am. v. Mullan*, 792 F. Supp. 3d 965 (W.D. Mo. 2025) is similar. In *Mullan*, a declaratory judgment action, the issue was whether a homeowners insurance policy provided liability coverage for the claims in an underlying state court wrongful death action. *Id.* at 969-970. Safeco moved for summary judgment arguing based on the facts known—as opposed to the allegations made in the second amended petition— that there was no coverage because the decedent's death was not caused by an "occurrence" (i.e., an accident). *Id.*

The Court stated that it must consider what Safeco knew at the time of the Second Amended Petition or what could be known from a reasonable investigation. *Id.* at 969, citing *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d at 42. The Court granted summary judgment in favor of Safeco finding that evidence known to Safeco indicated the death was not an "unexpected event" despite the allegations in the petition. *Id.*

Here, State Auto argues it is known to the parties that Decedent's death was caused by a drug overdose. The allegations in the First Amended Petition do not control over the facts known or reasonably apparent as of July 25, 2025, including the autopsy report. The facts known or reasonably apparent are that Decedent died from a methamphetamine and fentanyl overdose and that there is no evidence of a physical injury sustained from some unknown event involving the "dangerous conditions of the bathroom."

In response, Defendants rely on comments made by officers at the scene in their attempt to create a genuine issue of material fact as to the cause of Decedent's death. However, even though there are comments that some responder(s) observed marks on Decedent's neck, the record establishes that the coroner's cause of death was identified as "methamphetamine and fentanyl toxicity" and "no evidence of injury attributable to death." Further, the investigators and coroner had the information regarding the marks on Decedent's neck and found no issue of trauma or any other cause of death. Any relationship between marks on Decedent's neck, if any, and her death are speculative at best. Even greater speculation would be required to conclude the marks on her neck, if any, were caused by a dangerous condition of the insured party. The case summary from the autopsy states, "it is my opinion based on the circumstances surrounding death and the findings at autopsy that Mylee Moser died as a result of combined fentanyl and methamphetamine toxicity. The manner of death is accident."

The State Auto Policy excludes personal liability coverage for "bodily injury" "arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812." Methamphetamine and fentanyl are both controlled substances "as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812." The State Auto Policy's exclusion for

9

controlled substances applies and bars coverage for "bodily injury" (Decedent's death) arising out of the use of controlled substances. See *Safeco Ins. Co. of Am. v. Yount*, No. 2020 WL 6445840, at *3.

Finally, because State Auto owes no duty to defend, it also owes no duty to indemnify. "Missouri law is clear that where there is no duty to defend, there is no duty to indemnify." See *View Home Owner's Ass'n v. The Burlington Ins. Co*., 552 S.W.3d 726, 733 (Mo. App. 2018).

## CONCLUSION

Wherefore, for the reasons set forth herein, Plaintiff's Motion for Summary Judgment (Doc. 87) is **GRANTED** and Defendants' Motion for Judgment on the Pleadings (Doc. 90) is **DENIED.**

**IT IS SO ORDERED.**

DATED: May 28, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

10